## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

VALARIE MARIE FELTY,

                Plaintiff,

vs.                                                           Case No. 3:16-cv-1446-J-JRK

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Valarie Marie Felty ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of neck, back, and ankle injuries; depression; anxiety; and "[s]tress disorders." Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed January 30, 2017, at 59, 68, 79, 93, 212 (emphasis omitted). On February 6, 2013, Plaintiff filed applications for DIB and SSI, alleging an onset disability date of February 5, 2012. Tr. at 189 (DIB); Tr. at 191 (SSI).[2] Plaintiff's applications were denied initially, see Tr.

---

      [1]       The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed January 30, 2017; Reference Order (Doc. No. 14), entered January 31, 2017.

      [2]       Although actually completed on February 6, 2013, see Tr. at 189 (DIB); Tr. at 191 (SSI), the protective filing date of the applications is listed elsewhere in the administrative transcript as February 4, 2013, see Tr. at 59 (DIB); Tr. at 68 (SSI).

at 59-67, 77 (DIB); Tr. at 68-76, 78 (SSI), and were denied upon reconsideration, see Tr. at 93-106, 107 (DIB); Tr. at 79-92, 108 (SSI).

On January 20, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 37-58. At the time of the hearing, Plaintiff was twenty-eight years old. See Tr. at 41. The ALJ issued a Decision on February 5, 2015, finding Plaintiff not disabled through the date of the Decision. Tr. at 21-32.

On September 21, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On November 21, 2016, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises the following issue: "Whether . . . the ALJ's review properly applied the governing regulations and whether . . . significant inaccuracies and omissions exist in the Commissioner's final Decision." Memorandum in Support of Plaintiff's Position (Doc. No. 21; "Pl.'s Mem." or "Plaintiff's memorandum"), filed May 23, 2017, at 1 (some capitalization omitted).[3] Specifically, in raising this issue, Plaintiff argues that the ALJ erred in his assessment of the opinions of a number of Plaintiff's health providers, made some inaccurate statements, and omitted certain information. Pl.'s Mem. at 15-24.[4] On August 23,

---

[3] Plaintiff's memorandum contains unnumbered pages. Citations to it follow the pagination assigned by the Court's electronic filing system (CM/ECF).

[4] To the extent Plaintiff attempts to raise other issues in the "Conclusion" section of her memorandum—such as whether the ALJ erred in his credibility determination or failed to incorporate
(continued...)

2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 24; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

---

[4](...continued)
certain limitations in the hypothetical to VE—these issues are deemed to be waived for lack of development. See, e.g., N.L.R.B. v. McClain of Ga., Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) (stating that "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived"); see also T.R.C. ex rel. Boyd v. Comm'r, 553 F. App'x. 914, 919 (11th Cir. 2014) (citing McClain in a Social Security appeal and noting that the appellant "fail[ed] to develop any arguments demonstrating that the ALJ erred in his conclusions . . ."); see also Scheduling Order (Doc. No. 15), entered February 1, 2017, at 1 (directing parties to "identify with particularity the grounds upon which the administrative decision is being challenged," advising them that "[a]ny such challenges must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards," and that "[a]ny contention for which these requirements are not met is subject to being disregarded for insufficient development").

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 23-31. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 5, 2012, the alleged onset date." Tr. at 23 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: disorders of the spine and ankle, anxiety disorder and affective disorder." Tr. at 23 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 23-24 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except that [Plaintiff] can occasionally crawl, crouch, stoop, squat and bend. [Plaintiff] must avoid ladders, unprotected heights and the operation of moving machinery. [Plaintiff] is limited to performing simple, repetitive tasks in a low stress, non-production pace environment. [Plaintiff] is limited to lifting ten pounds. [Plaintiff] must avoid the push/pull of arm controls and the operation of foot controls.

Tr. at 25 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work." Tr. at 30 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("[twenty-six] years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including "[a]ssembler, small parts"; "[a]ddresser"; and "[t]able worker."

Tr. at 30-31. The ALJ concluded that Plaintiff "has not been under a disability . . . from February 5, 2012, through the date of th[e Decision]." Tr. at 31 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The undersigned addresses Plaintiff's specific arguments in turn.

## A. ALJ's Assessment of Opinions

### 1. Parties' Arguments

Plaintiff challenges the ALJ's assessment of the opinions of Dr. Edgardo Galante, Dr. Umesh Mhatre, Ms. Hydee Vanterpool, Ms. Karen Klein, and Dr. David Yudell. See Pl.'s Mem. at 17, 20-24.[6] Plaintiff contends the ALJ erred in failing to assign weight to Dr. Galante's opinion, id. at 21, and in failing to "appreciate the fact that Dr. Galante was a board[-]certified anesthesiologist and pain medicine specialist who operated a pain management office . . . ," id. at 17. According to Plaintiff, the "ALJ's failure to indicate the weight accorded to Dr. Galante's notes is significant because [he] recommended the same conservative measures . . . that had been provided by Dr. Joseph Shaughnessy[7] . . . along with the same diagnostic facet blocks and trigger point injections that would be administered (later) in Dr. Frank Collier's[8] office." Id. at 21-22. With regard to the ALJ's assessment of Dr. Mhatre's opinion, Plaintiff asserts that the reason offered by the ALJ for assigning more weight to Dr. Mhatre's treatment notes than to the Medical Statement completed by Dr. Mhatre is not supported by substantial evidence. Id. at 22. As to the opinions of Ms. Vanterpool and Ms. Klein, Plaintiff argues that the ALJ erred in "summarily reject[ing]" them. Id. at 23. Plaintiff

---

[6] To the extent Plaintiff passingly challenges the ALJ's assessment of other physicians' opinions, see Pl.'s Mem. at 21, this challenge is not developed and is thus deemed to be waived for lack of development, see, e.g., N.L.R.B., 138 F.3d at 1422; see also T.R.C. ex rel. Boyd, 553 F. App'x. at 919; see also Scheduling Order at 1.

[7] Dr. Shaughnessy treated Plaintiff in February 2012 for back and neck pain following a motor vehicle accident. See Tr. at 286-87, 294-418.

[8] Dr. Collier treated Plaintiff upon referral from Dr. Shaughnessy for back pain, arm pain, and neck pain and spasms. See Tr. at 442-44, 505-10, 513-14, 517-18, 526-27, 530-31, 536-39, 542-48.

contends the ALJ erred in giving significant weight to Dr. Yudell's opinion because the ALJ was "simply wrong" when he stated that Dr. Yudell based his opinion on a "thorough review of [Plaintiff's] records." Id. at 20; see Tr. at 29.

Responding, Defendant asserts that any error in failing to assign weight to Dr. Galante's treatment notes is harmless because "Dr. Galante recommended conservative treatment measures, including therapies and blocks/injections, as did Dr. Shaughnessy and Dr. Collier." Def.'s Mem. at 9. According to Defendant, "the ALJ in fact relied on Plaintiff's conservative treatment and its effectiveness i[n] determining Plaintiff's RFC." Id. With regard to Dr. Mhatre's treatment notes, Defendant argues that the ALJ gave more weight to the physician's treatment notes than to the Medical Statement because the treatment notes "show[ ] a good response to conservative treatment." Id. at 15. With regard to the opinions of Ms. Vanterpool and Ms. Klein, Defendant contends that "neither provider was an acceptable medical source, and therefore their opinions were not 'medical opinions' within the meaning of the [R]egulations; and were not entitled to any weight." Id. at 15-16 (citation omitted). Defendant asserts that while Plaintiff "had sporadic mental health treatment after [Dr. Yudell's examination], which of course, Dr. Yudell would not have considered, the ALJ did review this treatment history, and properly determined that Dr. Yudell's opinion was consistent with the evidence and entitled to significant weight." Id. at 14.

## 2. Applicable Law[9]

The Regulations establish a "hierarchy" among medical opinions[10] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[11] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating

---

[9] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[10] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[11] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

-8-

physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).

Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

### 3. Opinions at Issue/Analysis of ALJ's Decision

Dr. Galante initially saw Plaintiff on February 18, 2013 for neck pain. Tr. at 427.[12] As part of Plaintiff's care plan, Dr. Galante recommended "[s]trengthening exercises," "[e]lectrical [s]timulation to reduce spasm and enhanc[e] muscle re-education," "[h]ot packs to increase circulation and muscle relaxation," "cold [p]acks to help decrease pain and inflammation," an "[u]ltrasound to help promote tissue mobility and decrease scar tissue formation," and "[m]anual [t]herapy and [n]euromuscular re-education to improve balance, posture,

---

[12] Defendant asserts that the "treatment history of only one examination[ ] and two treatments within the space of a month, does not make Dr. Galante a treating physician or entitle his opinions to any weight." Def.'s Mem. at 9. This contention need not be addressed given that the undersigned finds below that Dr. Galante's notes are consistent with the ALJ's analysis and RFC finding.

-10-

coordination, proprioception, and kinesthetic sense." Tr. at 428. On February 28, 2013, Dr. Galante administered a cervical spine medial branch block, and on March 13, 2013, he performed a cervical spine facet denervation. Tr. at 440-41. The administrative transcript does not contain any further treatment notes from Dr. Galante.

Although the ALJ did not recognize that Dr. Galante is a physician, see Tr. at 27, and did not assign a weight to his treatment notes, these errors are harmless. Upon reviewing Dr. Galante's treatment notes, it is clear they are consistent with the ALJ's analysis and RFC finding. See Tr. at 427 (Dr. Galante's progress note indicating that Plaintiff's gait is normal, her strength is "5/5 in upper and lower extremities bilaterally," and her "[r]ange of [m]otion is full in all extremities"); Tr. at 428 (Dr. Galante's plan of care consisting of conservative treatment measures). But see Tr. at 427 (Dr. Galante's progress note indicating Plaintiff's head is tender to palpation in some areas, her neck is tender, and cervical extension and flexion elicited complaints of pain).[13] Accordingly, any error in the ALJ's failure to recognize that Dr. Galante is a physician and to specifically assign weight to the opinions expressed in Dr. Galante's progress notes is harmless. See, e.g., Wright v. Barnhart, 153 F. App'x. 678, 684 (11th Cir. 2005) (unpublished) (finding that "[a]lthough the ALJ did not explicitly state what weight he afforded the opinions of [four physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless").

Dr. Mhatre is a psychiatrist who treated Plaintiff. The administrative record contains two treatment notes from Dr. Mhatre: one from October 22, 2013 and one from December 17, 2013. Tr. at 559, 557. Dr. Mhatre completed a Medical Statement on September 10, 2014,

---

[13] The undersigned notes the ALJ found that Plaintiff's "statements regarding the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely credible . . . ." Tr. at 28. Plaintiff does not challenge the ALJ's credibility determination.

-11-

in which he indicated that Plaintiff has mostly moderate to severe limitations caused by her mental health condition. See Tr. at 466-70.

Ms. Klein and Ms. Vanterpool are two licensed mental health counselors who treated Plaintiff. The administrative transcript contains treatment notes from Ms. Klein spanning April 24, 2013 to January 5, 2015. See Tr. at 457-59, 558, 551-56.[14] Ms. Vanterpool evaluated Plaintiff on March 29, 2013, Tr. at 454-56, and treated her on April 3, 2013, Tr. at 460.

It appears Ms. Vanterpool and Ms. Klein worked with Dr. Mhatre in the same practice, based on the letterhead on their treatments notes and the multiple references to Dr. Mhatre in Ms. Klein's notes. See Tr. at 454-60, 551-60. Further, in the Medical Statement, Dr. Mhatre stated that Plaintiff's first consultation with him was on March 29, 2013. Tr. at 466. Although the administrative transcript does not contain a treatment note from March 29, 2013 signed by Dr. Mhatre, it does contain an evaluation note signed by Ms. Vanterpool with that date. See Tr. at 454-56. Apparently, Dr. Mhatre based the opinions in the Medical Statement on his own progress notes as well as those of Ms. Vanterpool and Ms. Klein.

The ALJ gave only "[p]artial weight" to the opined limitations in the Medical Statement because the ALJ found "that [Plaintiff] has fewer limitations than determined by [Dr. Mhatre]." Tr. at 29. The ALJ gave "[g]reater weight" to "Dr. Mhatre's treatment records, which show a good response to conservative treatment." Tr. at 29. The ALJ gave "[l]ittle weight" to the opinions of Ms. Klein and Ms. Vanterpool, "who each assigned [Plaintiff Global Assessment Functioning ('GAF')] scores of 49, indicating serious symptoms and limitations on functioning." Tr. at 30. According to the ALJ, "[t]hese providers are licensed mental health counselors, and are not acceptable treating sources as defined in [Social Security Ruling ('SSR')] 06-03p." Tr. at 30.

---

[14] There are two additional notes from Ms. Klein dated May 8, 2013 and October 22, 2013 that indicate Plaintiff missed her appointment on those dates. Tr. at 457, 560.

The undersigned finds that the weight given to Dr. Mhatre's opinions is not supported by substantial evidence. Dr. Mhatre's treatment notes do not show that Plaintiff's mental health impairments were responding well to treatment. The treatment notes indicate that Plaintiff's depression is "fairly control[led] but anxiety persists," Tr. at 559, and Plaintiff "shows significant anxiety with blackout spells . . . ," Tr. at 557. The ALJ apparently relied on the way Plaintiff's depression responded to treatment, but he failed to acknowledge the severity of Plaintiff's anxiety. See Tr. at 29. This is particularly troublesome because the ALJ found that "anxiety disorder," and not depression, is one of Plaintiff's severe impairments. Tr. at 23. Moreover, the ALJ failed to acknowledge that Ms. Vanterpool and Ms. Klein worked with Dr. Mhatre. As noted above, Dr. Mhatre apparently considered their progress notes in completing the Medical Statement. These notes do not show a "good response to conservative treatment." Tr. at 29; see Tr. at 458, 459 (treatment notes from Ms. Klein, dated April 24, 2013 and April 30, 2013, indicating Plaintiff's "depression and anxiety are unchanged"); Tr. at 554 (December 31, 2013 treatment note from Ms. Klein indicating Plaintiff's "anxiety and depression symptoms continue at moderate to severe levels").

The undersigned is unable to determine whether substantial evidence supports the ALJ's rejection of Ms. Vanterpool's and Ms. Klein's opinions. Although these mental health counselors are not acceptable medical sources and thus not entitled to deference, the ALJ nonetheless erred in failing to evaluate their progress notes and explain why he rejected their opinions, especially given that they work with Dr. Mhatre, who apparently considered their notes when completing the Medical Statement. See SSR 06-03p (providing that "[o]pinions from . . . sources[ ] who are not technically deemed 'acceptable medical sources' under [the SSA's] rules[ ] are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file"). The ALJ's

rejection of the opinions of Ms. Vanterpool and Ms. Klein on the singular basis that they are not "acceptable treating sources," Tr. at 30, without any substantive evaluation, frustrates judicial review.

Dr. Yudell is a licensed psychologist, who evaluated Plaintiff on February 25, 2013. See Tr. at 431-37. As part of the evaluation, Dr. Yudell considered Plaintiff's reports that she was experiencing "sleep disturbances, which include trouble staying asleep and fitful sleep; weight fluctuation; depressed mood; and feelings [of] helplessness." Tr. at 435. Dr. Yudell also noted that Plaintiff "experiences excessive worry and concern about a variety of issues and a history of panic attacks, at which time [Plaintiff] reported experiencing difficulty breathing, increased heart rate, and crying spells." Tr. at 435. Dr. Yudell assigned Plaintiff a GAF score of 65. Tr. at 437. The ALJ gave "[s]ignificant weight . . . to the opinion of Dr. Yudell" because Dr. Yudell "based his opinions upon his comprehensive examination of [Plaintiff] and a thorough review of the records." Tr. at 29. Moreover, the ALJ explained, "the opinions of Dr. Yudell are consistent with the other substantive medical evidence of record." Tr. at 29.

A proper assessment of the opinions of Dr. Mhatre, Ms. Vanterpool, and Ms. Klein may impact the weight assigned to Dr. Yudell's opinion. For this reason, the issue of whether substantial evidence supports the ALJ's determination that Dr. Yudell's opinion is entitled to significant weight need not be addressed. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## B. Inaccurate Statements

Plaintiff contends the ALJ made multiple inaccurate statements in the Decision. Plaintiff misrepresents some of the ALJ's statements, and to the extent the other targeted statements are inaccurate, most of these inaccuracies are harmless. Plaintiff asserts "the ALJ incorrectly described [P]laintiff's complaint of 'constant and dull' cervical pain as being accompanied with 'occasional spasm,' [but] Dr. Galante's February 18, 2013 progress note simply does not use the word 'occasional' to modify the word spasm . . . ." Pl.'s Mem. at 17 (emphasis omitted). The undersigned agrees with Defendant that "[i]t is impossible to discern how the outcome of the case could possibly have turned on such a minor discrepancy." Def.'s Mem. at 8.

Plaintiff further contends that the ALJ "interpreted Dr. Shaughnessy's notes as suggesting 'improvement' with only 'occasional back, neck and headache pain[,]' [but] Dr. Shaughnessy's treating progress notes do not however suggest that [P]laintiff's pain was limited to only an 'occasional' basis." Pl.'s Mem. at 16. The undersigned finds that the ALJ's description of Dr. Shaughnessy's notes is accurate, as they indicate that most of Plaintiff's pain is "intermittent." Tr. at 286. In any event, Plaintiff fails to explain how any inaccuracy in this regard would affect the ALJ's Decision.

Plaintiff also takes issue with the ALJ's statement that Dr. Yudell reported only "some" problems with Plaintiff's ability to concentrate. Pl.'s Mem. at 17. Plaintiff's assertion is incorrect. Consistent with Dr. Yudell's evaluation note, the ALJ recognized that Dr. Yudell reported Plaintiff "demonstrated a depressed mood with problems in concentration." Tr. at 27; see Tr. at 433 (Dr. Yudell's evaluation note indicating that Plaintiff "exhibited difficulty in maintaining attention and concentration for an extended period of time").

Moreover, Plaintiff argues the ALJ was wrong in stating that Plaintiff's "symptoms have improved significantly." Pl.'s Mem. at 19; see Tr. at 29. The undersigned finds that substantial evidence supports the ALJ's statement with respect to Plaintiff's physical impairments. See Tr. at 294, 298, 307, 442, 475, 479, 481, 482, 487, 489, 507, 511, 528 (treatment notes showing Plaintiff's improvement as to her physical impairments). With regard to Plaintiff's mental impairments, however, the ALJ's statement is not supported by substantial evidence. See Tr. at 458, 459, 556, 557 (treatment notes showing Plaintiff's lack of improvement as to her mental impairments). Thus, on remand, the ALJ shall reevaluate whether Plaintiff's symptoms with respect to her mental impairments have improved significantly.[15]

**C. Omissions**

Plaintiff argues the ALJ erred in failing to refer to certain evidence in the administrative transcript. See Pl.'s Mem. at 16-19. Specifically, Plaintiff asserts the ALJ "ignored important details" of Dr. Shaughnessy's June 2012 treatment notes, including notations regarding Plaintiff's range of motion and back pain. Id. at 16. Plaintiff also contends the ALJ "failed to acknowledge [P]laintiff's complaints of pain to Dr. Galante as ranging from [three] of [ten] to [nine] of [ten], nor did the ALJ substantially describe Dr. Galante's recommendations which included conservative measures . . . along with consideration of Trigger Point Injections and/or a diagnostic cervical facet block." Id. at 17 (emphasis and citation omitted); see Tr. at 427-28. Plaintiff further asserts the ALJ failed to note that "[P]laintiff could not recall 'any' of three random objects after a five[-]minute delay." Pl.'s Mem. at 17 (citation omitted); see Tr.

---

[15] Plaintiff also asserts that Plaintiff's date last insured is June 30, 2014 for DIB, and that the ALJ inaccurately stated Plaintiff's date last insured is December 31, 2013. Pl.'s Mem. at 15; see Tr. at 21, 23. Defendant disputes this. See Def.'s Mem. at 3 n.2. On remand, the ALJ shall ensure he uses the correct date last insured.

at 433 (Dr. Yudell's evaluation note indicating Plaintiff could not recall any of three random objects after a five-minute delay).

As to the omissions regarding Plaintiff's physical impairments, the undersigned finds that the ALJ sufficiently considered and discussed the medical evidence with respect to Plaintiff's physical impairments, see Tr. at 26-28, and any failure to refer to the specific evidence cited by Plaintiff does not render the ALJ's Decision unsupported by substantial evidence, see Dyer, 395 F.3d at 1211 (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole") (citing Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)). The undersigned cannot find that the ALJ considered Plaintiff's mental health condition as a whole because, as noted above, the ALJ did not properly evaluate the mental health records from Plaintiff's treating providers. Nonetheless, any failure to specifically mention Dr. Yudell's notation that Plaintiff could not recall any of three random objects after a five-minute delay does not appear to affect the ALJ's Decision nor does Plaintiff explain how the ALJ's failure to mention this piece of evidence would impact the ALJ's Decision. Thus, the ALJ's failure to refer to the specific evidence cited by Plaintiff is harmless.

## V. Conclusion

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A) Reevaluate the progress notes of Ms. Hydee Vanterpool and Ms. Karen Klein consistent with this opinion;

(B) Reevaluate Dr. Umesh Mhatre's opinions, including the opinions in the Medical Statement, taking into account the progress notes of Ms. Vanterpool and Ms. Klein;

(C) Reevaluate whether Plaintiff's symptoms with respect to her mental impairments have improved significantly;

(D) If necessary, reevaluate Dr. David Yudell's opinion;

(E) Ascertain Plaintiff's correct date last insured; and

(F) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 30, 2018.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of record

-18-